## WILMINGTON TRUST CO., EXECUTOR, *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 775.   Argued April 10, 1942.—Decided April 27, 1942.

*Mr. William S. Potter* for petitioner.

*Mr. Richard H. Demuth,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. J. Louis Monarch* and *Morton K. Rothschild* were on the brief, for respondent.

Mr. Justice Douglas delivered the opinion of the Court.

The sole question presented by this case is whether certain sales of shares of stock made by the taxpayer, petitioner's decedent, were "short" sales or sales of "long" stock. If they were not "short" sales, then the taxpayer was justified in deducting from dividends credited to the "long" shares the amount of dividends charged to the shares sold.

The taxpayer maintained several accounts with a brokerage house—"regular," "special," and "short." The "regular" and "special" accounts were "long" accounts. During the years 1934 and 1935 the taxpayer's "long" accounts were credited with dividends on certain shares. During the same years, her "short" account was charged with dividends on shares of the same stock issues. The taxpayer did not include in her income tax returns for 1934 and 1935 the dividends credited to her "long" accounts—on the theory that the amount of stock which she owned was not the number of shares credited to her in the "long" accounts, but only the number of shares by which her "long" position exceeded her "short" position in each of the stock issues held in the several accounts. The Commissioner assessed deficiencies on the theory that the sales made through the "short" account were in fact "short" sales, and that the dividends charged to the "short" account represented additional cost of the shares and could not be offset against the dividends credited to the "long" accounts. Accordingly, he ruled that the taxpayer was taxable on all of the dividends credited to her "long" accounts. On a petition for review, the Board of Tax Appeals found that the sales made through the "short" account were sales of shares held in the taxpayer's "long" accounts. It therefore held that the dividends charged to the "short" account should be offset against the dividend credits.

42 B. T. A. 173. The Circuit Court of Appeals reversed. 124 F. 2d 156. We granted the petition for certiorari, limited to the question whether the sales in the "short" account were in fact "short" sales, because the action of the Circuit Court of Appeals in setting aside the findings of the Board on that issue was seemingly erroneous under the rule of such cases as *Helvering* v. *Lazarus & Co.,* 308 U. S. 252.

The findings of the Board were substantially as follows: The sales in question were sales of shares of which the taxpayer held an equal or greater number of the same kind in her "long" accounts. In every such instance the broker, acting under authority from the taxpayer to consider all her accounts as a unit, treated the sales through the "short" account as sales of the taxpayer's "long" shares. None of these sales was labeled as a "short" sale. The broker required no margin and charged no "short" sale tax. He credited the "short" account with the proceeds and made an entry therein showing delivery of the shares at the time of the execution of the sales to the purchaser. In no such case did the broker borrow any stock from other brokers or customers. Orders were executed on the stock exchange in the regular way, and delivery was made on the next full business day from certificates in "street" names held by the broker's New York correspondents. Those "street" certificates included shares held by the broker for the taxpayer, though none of them was specifically designated as belonging to the taxpayer. The taxpayer was allowed interest on the proceeds of sale. Dividends were collected for the taxpayer only on the number of shares by which her "long" position exceeded her "short" position. On the other hand, whenever the taxpayer's "long" accounts contained no shares of the kind sold, the broker executed the sale as a "short" sale, required the customary margin, charged the "short" sale tax, and made delivery from borrowed

stock. On the basis of such facts, the Board found that "the sales in question were intended to be and were actually executed as ordinary sales, or sales of shares held" in the taxpayer's "long accounts."

In overturning that finding of fact, the Circuit Court of Appeals laid great emphasis on the manner in which the transactions were entered on the taxpayer's books. It also noted that gains or losses were not reported at the moment of the sales, but only when the covering transaction was completed, and that the certificates used in completing the sales were in no way designated as belonging to the taxpayer. And it also stated that it could not be said that the broker did not use borrowed stock to make deliveries on the "short" sales. On that aspect of the case, respondent lays primary emphasis. The contention is that the taxpayer's "long" stock was not "delivered" in consummation of the sales in the "short" account, since the broker merely made delivery out of certificates in "street" names held by it or for its account, instead of borrowing from other brokers, and since none of those "street" certificates was in any way designated as the taxpayer's. It is urged that, the facts being undisputed, the question of whether stock was borrowed to complete the sales was a question of law as respects which the Board did not have the final say.

The true character of the "short" account is a question of fact to be determined in the light of the outward or manifested intention of the taxpayer and the way in which the account was actually managed. The designation of the accounts, the fact that, as a matter of bookkeeping, sales made through the "short" account apparently were not reflected in the "long" accounts, the method of reporting gains or losses are some evidence to support the conclusion of the court below. But there are numerous other circumstances which look the other way. They are embraced in the several subsidiary findings which the Board

made and which we have enumerated. Those findings are supported by substantial evidence and are abundant justification for the Board's ultimate finding that the sales made through the "short" account were ordinary sales. It is the function of the Board, not the Circuit Court of Appeals, to weigh the evidence, to draw inferences from the facts, and to choose between conflicting inferences. The court may not substitute its view of the facts for that of the Board. Where the findings of the Board are supported by substantial evidence they are conclusive. *Helvering* v. *Lazarus & Co., supra; Helvering* v. *Kehoe,* 309 U. S. 277, and cases cited. Under the statute, the court may modify or reverse the decision of the Board only if it is "not in accordance with law." 44 Stat. 110, 26 U. S. C. § 1141 (c) (1). In this case the criteria which the Board employed in determining whether the sales were "short" sales complied with the legal principles announced in *Provost* v. *United States,* 269 U. S. 443.

*Reversed.*