MAYAGÜEZ SUGAR COMPANY, INC., Petitioner, *v.* COURT OF TAX APPEALS OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

No. 1286. Argued July 9, 1942.—Decided July 23, 1942.

738

*J. J. Ortiz Alibrán* for petitioner. *George A. Malcolm, Attorney General, M. Rodríguez Ramos, Assistant Attorney General,* and *Eulogio Riera, Deputy Attorney General,* for intervener.

MR. JUSTICE SNYDER delivered the opinion of the court.

The Mayagüez Sugar Co., Inc., in its income tax return for the year ending June 30, 1935, listed a gross income of $571,145.39 and total expenses or deductions of $628,478.70, showing a net loss of $57,333.31. The corporation therefore paid no income tax for the said fiscal year.

After investigation, on January 13, 1938, the Treasurer notified the corporation of a deficiency amounting to $13,807.26. The Treasurer's notice indicated that, according to his investigation, the corporation had a net income of $67,147.78 during the year in question. The sum assessed was made up as follows:

| | |
|---|---:|
| 12½ per cent on $67,147.78 | $8,393.47 |
| Interest at 6 per cent | 1,217.05 |
| Penalty of 50 per cent on $8,393.47 if there were fraud to evade tax | 4,196.74 |
| | $13,807.26 |

On February 11, 1938, the corporation appealed to the Board of Review and Equalization. The Board held a hearing on October 2, 1940. While the case was pending decision, Act No. 172, Laws of Puerto Rico, 1941, was passed. Pursuant to § 11 of that Act, the file of the instant case was delivered to the Court of Tax Appeals. On March 6, 1942, without any further proceedings having been held before it, the Court of Tax Appeals decided that the taxpayer was liable for the said sum of $13,807.26. We granted the petition of the corporation for a writ of certiorari.

We are initially confronted with the contention of the Attorney General that we have no jurisdiction to entertain the instant case. The Attorney General's position is that the only remedy in this case was by appeal, and that the writ of certiorari issued herein must therefore be annulled.

Section 76 (a) of the Income Tax Act provided for detailed procedure for litigation in connection with deficiencies. We said in *P. R. Fertilizer Co.* v. *Treasurer,* 50 P.R.R. 389, 401, that the procedure thus established in that Act "must prevail over the general law regarding suits in cases of taxes paid under protest, . . . ".

Thereafter, Act No. 172, Laws of Puerto Rico, 1941, creating the Court of Tax Appeals, was passed. It was therefore necessary to amend the sections of the Income Tax Act relating to deficiencies, insofar as they provided for resort to the ordinary courts rather than to the Court of Tax Appeals. This was done by Act No. 23 of the Special Session of 1941. Section 9 of Act No. 23 reads in part as follows:

"Section 9.—Section 76 of said Act No. 74, of August 6, 1925, is hereby amended to read as follows:

" 'Section 76.—(a) Whenever a taxpayer should not agree with a deficiency or part of a deficiency determined by the Court of Tax Appeals of Puerto Rico under Section 57(b) of this Act, he shall be obliged, nevertheless, to pay it in full, and if he should desire to appeal to the Supreme Court of Puerto Rico in the manner

provided by law, in making the payment he shall protest of the part of the deficiency with which he does not agree and he shall request the collector or official making the collection to endorse his protest on his receipt, specifically setting forth the part of the tax which is paid under protest, and said receipt, or a certified copy thereof, shall form part of his appeal to the Supreme Court, without which requirement the said court shall not have jurisdiction.'"

Section 5 of Act No. 172, creating the Court of Tax Appeals, referring to the decisions of that court, reads in part as follows:

". . . These decisions shall be final; but the aggrieved party may, within thirty (30) days after the decision has been rendered, appeal therefrom to the Supreme Court of Puerto Rico, through a writ of certiorari for a revision of the proceedings. The Supreme Court of Puerto Rico shall have competent jurisdiction for such revision, basing itself exclusively on the record of the case, . . .".

The Attorney General apparently concedes that all decisions of the Court of Tax Appeals are reviewable by this court pursuant to the special form of certiorari provided in §5 of Act No. 172, with the exception of decisions involving deficiencies. In the latter case, the Attorney General contends that the taxpayer must proceed as though he were prosecuting an ordinary appeal from a district court to this court.

The reasoning of the Attorney General is as follows: §9 of Act No. 23 provides that after decision by the Court of Tax Appeals, "if he [the taxpayer] should desire to appeal to the Supreme Court of Puerto Rico in the manner provided by law", the taxpayer must take certain steps. We must, under the *P. R. Fertilizer* case, confine ourselves to the Income Tax Act to determine the procedure to be followed in invoking the jurisdiction of the courts. To "appeal" to this court "in the manner provided by law" must therefore necessarily be in the same manner as though the case had been decided by a district court, rather than by the special form of certiorari provided in the Act creating the Court of Tax Appeals.

The difficulty with the Attorney General's position is that we no longer have a situation whereby this court in its ordinary appellate jurisdiction is passing on judgments of an inferior court. Nor is the Income Tax Act any longer the exclusive repository of *all* the procedure for judicial review of all questions arising thereunder. The Legislature has changed the situation in both respects. Act No. 172 created an administrative agency with quasi-judicial powers to determine property, income and inheritance tax questions. Jurisdiction to decide these cases in the first instance has been withdrawn from the district court. In its place there has been substituted a centralized tribunal to specialize exclusively on such tax cases. Section 4 of the Act creating the Court of Tax Appeals reads in part as follows:

"The court shall have jurisdiction to revise the assessment and reassessment of personal and real property and shall take cognizance of all claims which may be brought before it by interested parties, against the decisions of the Treasurer of Puerto Rico which may affect the [levying and] payment of property taxes, income taxes, and inheritance taxes."

It cannot be gainsaid that the jurisdiction of the Court of Tax Appeals as to income, property and inheritance taxes is broad and comprehensive. And the statute creating it *specifically* provides for review of its decisions by a special form of certiorari. Nothing we said in the *P. R. Fertilizer* case prevents us from now holding, particularly in view of the changed situation resulting from the 1941 legislation, that review "in the manner provided by law"—the language used in the 1941 amendment of §76 (*a*) of the Income Tax Act—means in the manner provided by the Act creating the Court of Tax Appeals. On the contrary, this phrase in the amended Income Tax Act in itself compels us to go outside that act to determine what constitutes appeal "in the manner provided by *law*", and consequently, the theory on which the *P. R. Fertilizer* case was decided—that the Income Tax

Act is a self-contained Act on questions of procedure—no longer applies.

We are not persuaded by the argument of the Attorney General that the use of the phrase "if [the taxpayer] should desire *to appeal*", found in the same 1941 amendment of §76 (*a*), demonstrates that the Legislature intended, in the case of deficiencies, that an ordinary appeal would lie rather than the special form of certiorari provided by the Act creating the Court of Tax Appeals. The word "appeal" is frequently used in our statutes loosely as a synonym for review by some superior body. It is used indiscriminately throughout both the Income Tax Act and Act No. 172 in that fashion. There are countless statutes in this jurisdiction in which the word "appeal" is used to express the right of an individual to file an *original* action in the courts to revoke or modify an *executive* decision (See *General Motors Acceptance Corporation* v. *Brañuela et al., ante,* p. 680, decided July 13, 1942). Act No. 172 and the various taxing statutes, as amended in the Special Session of 1941, speak constantly of "appeal" from the Treasurer to the Court of Tax Appeals. And the remedy provided in Act No. 172 for review by this court of decisions of the Court of Tax Appeals is called "appeal . . . through a writ of certiorari". Indeed, the very name, Court of Tax Appeals, describing a body which is neither a court nor hears appeals in the traditional sense, demonstrates how fallacious this argument can be. To hold that in this one place in § 9 of Act No. 23, and in no other, the Legislature was using "appeal" in the technical and traditional legal sense would be to attribute to the Legislature a precision of language which it demonstrably did not exercise in its use of that word throughout this and the other pertinent statutes.

When the Legislature desired in other types of tax cases to retain jurisdiction in the district courts, including an ordinary appeal as a matter of right to this court, it said so

in unmistakable language. See Act No. 17, Laws of Puerto Rico, 1941, Special Session, amending the Act providing for the payment of taxes under protest. Presumably, in that instance the Legislature was motivated by the facts that (*a*) appeal as a matter of right from a district court to the Supreme Court traditionally lies, and that (*b*) discretionary review of the decisions of a specialized tribunal, less apt to err within its domain than district courts with no special competence in the subject matter involved, is a sufficient safeguard for parties feeling aggrieved by its decisions.

But above all, the Attorney General's argument founders at the crucial stage of examination of the consequences of his position. We have had no cases called to our attention holding that appeal, in the traditional, technical sense of review of a decision of a lower court by a court superior to it in the judicial hierarchy, lies from a decision of an administrative agency to an appellate court. The Legislature could, of course, provide that the decisions of such an agency shall be reviewed by us in the same manner as though the aggrieved party were prosecuting an appeal from an inferior court to an appellate court. But until the Legislature so provides, we are unable to read such a studied meaning into the cryptic and casual language employed here, particularly in view of the plain intention to the contrary already noted and in view of the anomalous situation which would result whereby the remedy to review decisions of the Court of Tax Appeals by this court would be uniformly as *specifically* provided in the Act creating the Court of Tax Appeals, except in one, and perhaps the most important, type of case.

The Attorney General recognizes one consequence of the position he takes. The question which would immediately arise would be the time allowed within which to take such an "appeal". The Attorney General's suggestion is that we should follow in this respect the provision of Act No. 172 providing that review by the special form of certiorari there-

in provided must be prayed for within thirty days. But if we are to look to Act No. 172 for the period within which such a petition for review must be filed, we are unable to see how we can exclude the taxpayer from finding in the Act creating the Court of Tax Appeals the remedy which he is to exercise within that period; namely, the special form of certiorari provided by that Act.

We need not tarry over the question of the language of Act No. 172 whereby a taxpayer appeals through certiorari. What label the Legislature used was not important. We have already seen that the word "appeal" is used loosely throughout this and other statutes as a synonym for review by a superior body. What is important is that the Legislature has clearly evinced its intention that a taxpayer or the Treasurer may invoke the jurisdiction of this Court to review decisions of the Court of Tax Appeals by means of a special statutory remedy provided in Act No. 172 which seems roughly similar to the classical writ of certiorari, with all the requisites of the same except as otherwise provided by Act No. 172 or except as necessarily implied by virtue of the types of cases involved.

■ We find no occasion here to spell out in detail the scope of this review. A similar problem has been satisfactorily solved in this jurisdiction. (*Montaner* v. *Industrial Commission,* 54 P.R.R. 686, 688; *González* v. *Industrial Commission, ante,* p. 606, decided June 24, 1942). We confine ourselves at this time to stating that "the record" contemplated by § 5 of Act No. 172 must, unless the parties agree to the contrary, necessarily include the evidence before the Court of Tax Appeals. As was pointed out in *Jackson* v. *The People,* 9 Mich. 111 (1860), "The office of a certiorari is not however to review questions of fact, but questions of law. And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other, but simply to determine whether the

evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal." See also, Review of Acts of Non-Judicial Bodies by Certiorari, 19 Iowa L. Rev. 609; Cellhorn, Administrative Law, Cases and Comments, pages 805–825. The Supreme Court of the United States in an opinion by Mr. Justice Douglas in *Wilmington Trust Co.* vs. *Helvering,* 316 U. S. 164, (86 L. ed. 436), decided April 27, 1942, speaking of the Federal Board of Tax Appeals, laid down the controlling test in the following language: "It is the function of the Board, not the Circuit Court of Appeals, to weigh the evidence, to draw inferences from the facts, and to choose between conflicting inferences. The court may not substitute its view of the facts for that of the Board. Where the findings of the Board are supported by substantial evidence they are conclusive. *Helvering* v. *Lazarus & Co., supra; Helvering* v. *Kehoe,* 309 U. S. 277, and cases cited. Under the statute the court may modify or reverse the decision of the Board only if it is 'not in accordance with law'. 44 Stat. 110, 26 U.S.C. §1141 (c) (1)."

■ The Attorney General's contention that the corporation did not invoke the jurisdiction of this court within the thirty-day period allowed by §5 of Act No. 172 is without substance. The petition was filed within the thirty-day period, but we issued the preliminary writ after it had elapsed. Obviously, our jurisdiction depends on the date the petition is filed, and not on the date of the preliminary writ. Otherwise, the taxpayer or the Treasurer, when petitioning for certiorari, although complying with the statutory requirement, could be deprived of his remedy by the mere failure of this Court, as in the instant case, to issue the preliminary writ before the thirty days expired.

We therefore conclude that the petition for certiorari was properly filed pursuant to §5 of Act No. 172, Laws of Puerto

Rico, 1941, and enables us to review the decision of the Court of Tax Appeals upholding the deficiency assessment of the Treasurer in this case.

We pass to the merits of the case. Apparently the principal question in this case in the first instance involved the alleged liability of the corporation for income taxes on benefit payments made to it by the United States pursuant to a Federal law by virtue of which such payments were made to those who grew and marketed sugar cane under the restrictions and regulations provided therein. In the event of liability for income taxes on such benefit payments, a subsidiary question was whether or not such income was taxable for the year in which the sugar cane was grown or for the year in which the benefit payments were actually received.

At the hearing before the Board of Review and Equalization, the corporation contended that its failure to report as income for the year ending June 30, 1935, the benefit payments for its standing sugar cane as of that date was not improper, as the said payments were actually received during the next year. In deciding the case on the record before the Board of Review and Equalization, the Court of Tax Appeals asserted that the general rule was that benefit payments were taxable as income for the year when received. But the court went on to state:

"In order to apply this decision of ours the taxpayer ought to have proved the value of its standing sugar cane on June 30, 1935, so that that value, on appearing in the balance sheet, would not have reduced the income in 1935. If the taxpayer had proved that value, we would be in a position to do it justice by determining the inventory of the standing sugar cane on June 30, 1935, and applying the principle already adopted by this court that the income derived as a result of the benefit payments corresponds to 1936. However, we cannot do justice to the taxpayer in this case because we do not have the information."

The court also concludes that the income tax return in question had been made fraudulently. This conclusion is based partially on a report of two inspectors of the Treasury Department which the court found in the file submitted to it by the Board of Review and Equalization. The report advised the Treasurer (*a*) of the refusal of certain officers of the corporation to furnish documents at the request of the inspectors, and (*b*) of certain data found in the books of the corporation for the *succeeding* year with reference to the benefit payments in controversy.

 Presumably, the Court of Tax Appeals undertook to decide this case without conducting a hearing therein by virtue of §11 of Act No. 172 of 1941. That section reads as follows:

"The Treasurer of Puerto Rico in his capacity as president ex-officio of the present Board of Review and Equalization created by Act No. 75, of August 2, 1923, as amended by Act No. 46, of April 26, 1928, is hereby authorized and directed to deliver to the Court of Tax Appeals created by this Act, all the material, furniture, books, and all matters pending before the Board of Review and Equalization at present in operation."

There is nothing in that section which authorizes the Court of Tax Appeals to decide cases which were pending decision of the Board of Review and Equalization. On the contrary, the section specifically provides for mere *delivery* of the files and of all pending "matters". But even if the section had granted such authority to the court, whether implicitly or explicitly, it would have been invalid. This is not to say that the taxpayer had a vested right in the previous remedy. But he did have a right to some remedy; namely, a day in court before an impartial tribunal with the power to find the facts.

Did this taxpayer ever have his day in court? Under the previously existing law, the Board of Review and Equalization was an executive reviewing agency within the Treasury

Department. It was an arm of the executive branch of government (Act No. 46, Laws of Puerto Rico, 1928). If dissatisfied with its decisions, a taxpayer could file a proceeding in the district court *where his case was heard de novo* (§§57(*a*) and 76(*a*) of the Income Tax Act of 1924). The Board of Review and Equalization therefore served merely *within the Treasury Department* as a check on the Treasurer's individual judgment. Its decisions were in no sense a judicial review of the Treasurer's decision. Indeed the Treasurer himself was Chairman of the Board of Review and Equalization. The judicial review, if the taxpayer felt aggrieved and invoked it, came in the district court, which found the facts in the first instance.

The Legislature therefore quite properly provided in §11 of Act No. 172 only for the delivery of files and pending matters of the Board to the Court of Tax Appeals. If the Court of Tax Appeals had been merely substituted for the Board, it would have perhaps been proper for the court to proceed to decide all such pending cases without a further hearing. The taxpayer would then have obtained his hearing on the facts by a trial *de novo* in the district court.

The role of the Board, however, was narrow and restricted. Its acts were purely executive. The Court of Tax Appeals, on the other hand, has much wider functions, duties and powers. It has perhaps inherited some of the executive functions of the Board. With that question we are not at this time concerned. What is more important here is that the Court of Tax Appeals has been substituted for the district court as the final fact-finding body in controversies between taxpayers and the Treasurer. In the instant case, the taxpayer having never had an opportunity to obtain a finding of the facts from the district court, is entitled to a hearing for that purpose from the body which has replaced the district court in that respect.

Even assuming the Court of Tax Appeals had given the taxpayer a hearing, it was wholly unjustified in taking into consideration the report of the inspectors of the Treasury Department in determining that the taxes in question were due and in determining that the tax return was made fraudulently. This report had never been introduced in evidence before the Board of Review and Equalization. The taxpayer was never confronted with it. It never had an opportunity to cross-examine its authors or to offer evidence in refutation of its contents. To permit findings of fact on controversial and disputed questions to be based on documents or testimony of which the aggrieved party becomes aware for the first time in the decision of the fact-finding body would be to make a dead letter of due process. Surely a minimum standard of fair play requires an opportunity for cross-examination as to the contents of such a report and for rebuttal evidence. (See Davis, An Approach to Problems of Evidence in the Administrative Process, 55 Harv. L. R. 364 (January 1942), particularly at page 411; Pillsbury, Administrative Tribunals, 36 Harv. L. R. 583, 587.) The taxpayer will be entitled to this opportunity at the hearing before the Court of Tax Appeals which the Legislature clearly intended all taxpayers to have and which must be granted to this corporation.

The decision of the Court of Tax Appeals will be reversed and the case remanded to that court for further proceedings not inconsistent with this opinion.