## GREEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2602.

Circuit Court of Appeals, Tenth Circuit.

Jan. 14, 1943.

Arthur Leach, of Oklahoma City, Okl. (F. A. Rittenhouse and Vernon E. Cook, both of Oklahoma City, Okl., on the brief), for petitioner.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented by this appeal is in what year bonds of the taxpayer became worthless and subject to deduction for income tax purposes as a bad debt, under Section 23(k) (1) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code § 23(k) (1). The taxpayer determined that the

bonds became worthless in 1938 and claimed a deduction therefor on his 1938 income tax return. The Commissioner disallowed the deduction and assessed a deficiency in tax. The Board of Tax Appeals sustained the Commissioner, and the taxpayer seeks a review.

The facts are not in dispute and may be briefly summarized as follows:

The Roxana Coal Company was organized in 1926 for the purpose of constructing a short line railroad into certain timber and coal lands. It issued $200,000, ten year, six per cent interest bearing bonds. It transferred its railroad right of way and other properties to trustees to secure this bond issue. The railroad was never completed and only about seven miles of track was ever constructed. The railroad company became indebted to the L. & N. Railroad Company in the sum of $24,000. It became financially embarrassed and unable to complete the undertaking. Assuming to act for the company, one E. J. Franklin entered into a contract with C. D. Jacobs in December of 1931 for the sale of approximately seven miles of railroad right of way and other incidental properties Jacobs obligated himself to form a company to purchase the property for $200,000, to be paid for at the rate of $3 for each loaded freight car hauled over the line for shipment to points beyond Roxana. Franklin obligated himself to obtain the consent of the stockholders and officers of the company and to secure a release of the lien for the payment of the bonds and obtain an extension of the debt due the L. & N. Railroad Company. The Roxana Company was to retain a lien on the property to secure the payment of the purchase price. The agreement was consummated, the original lien was released, the L. & N. Railroad agreed to subordinate its indebtedness, and the bondholders delivered the bonds to Franklin, who was to hold the same for retirement, as provided in the contract. Operation under the contract was started, but the purchaser of the Roxana properties, the Gray Goose Railroad Company, did not complete the purchase or pay off the bonds. No interest was ever paid on the bonds and none of the bonds was paid after maturity. The coal mining properties to which the railroad led were operated by the Starling Coal Corporation. This corporation and the Gray Goose Railroad Company were both placed in receivership in the latter part of 1936 or early in 1937. The taxpayer knew of these receiverships. By 1937, nearly $8,000

in delinquent taxes had accumulated against the property and in that year the taxpayer's attorney was notified that the property would be sold early in 1938 for delinquent taxes.

The taxpayer first acquired these bonds, of the par value of $15,000, some time between 1926 and 1929. He later transferred them to the Municipal Securities Company, a business trust owned and operated by himself and members of his family. He reacquired the bonds from this trust in 1932.

The Board found that it could not say on the evidence adduced that the bonds had any value at any time after 1931. This amounted to a finding that they did not become valueless in 1938. This finding is binding on us if supported by substantial evidence. Wilmington Trust Co. v. Commissioner, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352; Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226.

The determinative question in these cases is largely one of fact, and while the question in each case depends to a considerable extent upon the facts in that case, yet there are certain well defined principles which control the disposition of all such cases. Where loss is claimed for worthless stock, the test is the actual worthlessness thereof. The burden is on the taxpayer in the first instance to establish the year in which the stock became worthless. Jones v. Commissioner of Internal Revenue, 9 Cir., 103 F.2d 681; Nelson v. United States, 8 Cir., 131 F.2d 301.

The exact time when stock becomes worthless cannot ordinarily be established with mathematical certainty and the question must be determined in a practical manner. The taxpayer is not held to an absolute certainty in determining the identifiable event that makes stock worthless. A. R. Jones Oil & O. Co. v. Commissioner of Internal Revenue, 10 Cir., 114 F.2d 642. But neither is it sufficient for a taxpayer to simply say he determined that the stock became worthless at a certain time. He is bound to make an active inquiry, Rosenthal v. Helvering, 2 Cir., 124 F.2d 474, and his action will be judged by the conduct of a prudent business man and he will be presumed to know what any prudent person ought to know from facts thus brought to his attention. Sabath v. Commissioner of Internal Revenue, 7 Cir., 100 F.2d 569; Avery v. Commissioner of Internal Revenue, 5 Cir., 22 F.2d 6, 55 A.L.R. 1277.

▪ If all the identifiable indices which go to establish the identifiable event point to a definite time, that will establish the time when the stock becomes worthless, and the taxpayer will not be heard to say that he determined its worthlessness at a different time.

▪ Here all the incidents which go to establish the worthlessness of the stock occurred prior to 1938. The taxpayer obtained no facts in 1938 that he did not possess in 1937. He knew in 1937 that the bonds had matured, that no payments had been made of either interest or principal, that both the Starling Coal Corporation and the Gray Goose Railroad were in receivership, that nearly $8,000 in delinquent taxes stood against the property, and that the property would be sold early in 1938 for delinquent taxes. He must have known that the money for these taxes would not be forthcoming because both companies were broke and in receivership, and that the property would be lost at the tax sale. All this he knew prior to 1938. All this tends to establish the worthlessness of the stock prior to the year in which he claimed it as a deduction. The finding that the bonds had no value prior to 1938 is amply supported by the record.

Affirmed.

MURRAH, Circuit Judge (dissenting).

Bonds of the nature involved here are debts, and deductible as such when ascertained to be worthless under section 23(k) (1) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code § 23(k) (1), and preceding acts. The statute prescribes no formula for ascertaining the worthlessness of a bad debt, or the year in which it becomes worthless. The taxpayer, in the first instance, is made the judge of the worthlessness of the debt. This court so held in Farmer v. Commissioner, 10 Cir., 126 F.2d 542.

A determination by the commissioner of internal revenue is presumptively correct, and findings of fact by the board, when supported by substantial evidence, is controlling here and we are authorized to modify or reverse only if it is not in accordance with law. Wilmington Trust Co. v. Helvering, 316 U.S. 164, 168, 62 S.Ct. 984, 86 L.Ed. 1352. But where, as here, there is no conflict in the evidence, the legal conclusions to be drawn therefrom present questions of law, and in this posture it becomes our province to ascertain whether the conclusions reached are in conformity with the statutory purpose. Farmer v. Commissioner, supra.

The commissioner offered no evidence concerning the year in which the bonds in question became worthless, neither did the board find in what year the bonds became worthless. It was content to hold that the bonds had no value after the year 1931. In that year, and until 1938, the parties interested in the railroad venture, including this taxpayer, owned valuable coal and timber lands which the railroad in question was intended to exploit by furnishing suitable and necessary transportation from the mines and timber lands, to other railway facilities. In 1931, the parties effected a reorganization of the venture, looking toward a recoupment of the bonded indebtedness by a per car charge for transportation over the railway, which at that time had been completed for a distance of seven miles. Of course the operation of the railroad and resultant revenues were dependent upon the operation of the coal mine and the exploitation of the timber lands. During the period in which the board has found that the bonds were worthless, the parties who owned them were, according to the evidence, making diligent efforts toward recoupment, and it cannot be said from the evidence adduced here that ordinary human insight and reasonable business experience would condemn the entire venture as a complete loss. See Jones Oil & Operating Co. v. Commissioner, 10 Cir., 114 F.2d 642.

In the determination of when value becomes extinct, and hence the debt worthless, courts should not substitute their judgment for the judgment of the investors, and this rule would seem to have greater force when the investor is denying worthlessness. Until 1938, the parties owned what appears from this record to be valuable coal and timber lands. If the mines were producing coal, or if the timber was being marketed, a revenue from the railroad was certain, and ascertainable with exactitude, depending only upon the number of cars hauled over the railroad. The railroad was indebted to another railroad in the sum of approximately $24,000, but it was subordinated to the payment of the bonded indebtedness. It was not until 1938, when foreclosure of the lands was imminent, and it was realized that the title to the lands would pass from the investors, that the taxpayer ascertained that his investment was worthless.

I do not think the facts here justify a contra legal conclusion. I would sustain the

judgment of the taxpayer and remand the case to the board to ascertain the cost basis to the taxpayer for purposes of deduction.