# COTAN CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

## No. 8549.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 6, 1944.

Decided Feb. 7, 1945.

Kenneth Carroad, of New York City (Joshua Peterfreund, of New York City, on the brief), for petitioner.

MaryHelen Wigle, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GOODRICH and McLAUGHLIN, Circuit Judges and KALODNER, District Judge.

McLAUGHLIN, Circuit Judge.

This petition for review concerns deficiencies in unjust enrichment tax for the calendar year 1936, under Title III, Section 501 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 944.[1]

Petitioner is a manufacturer of leatherized textiles and rubberized fabrics. It buys raw cotton cloth of various constructions and weights. In its original state, a lot or roll of this can be traced to a particular seller but once the material is in process it is practically impossible to follow.

After the Agricultural Adjustment Act had been declared unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, on January 6, 1936, the petitioner was reimbursed in the sum of $26,495.61 for processing taxes imposed on cotton by the said Act. From this figure the Commissioner deducted $4.20 as a tax adjustment, leaving a balance of $26,491.41 of reimbursements. The Tax Court found that $13,555.30 of

---

[1] Section 501. "Tax on Net Income from Certain Sources

"(a) * * * (2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees.

* * * * * * * *

"(b) The net income (specified in subsection (a) (1) from the sale of articles with respect to which the Federal excise tax was not paid, and the net income specified in subsection (a) (2) or (3), shall not include the net income from the sale of any article, from reimbursement with respect to any article, or from refund or credit of Federal excise tax with respect to any article (1) if such article (or the articles processed therefrom) were not sold by the taxpayer on or before the date of the termination of the Federal excise tax; * * *."

this amount was applicable to goods on hand on January 6, 1936. The balance of $12,936.11 was held subject to the so-called "windfall" tax because the taxpayer had passed the whole of the processing tax burden on to its vendees. The taxpayer contends that all of the reimbursements, with the exception of $1,262.10, were represented in its January 6, 1936, inventory of cotton goods on hand. In addition, it claims that it absorbed the entire processing tax burden.

The petitioner's main support for its assertion that the reimbursements applied to unsold goods on hand January 6, 1936, consisted of two exhibits: An inventory as of December 31, 1935, with attached work sheets adjusting it to January 6, 1936; and a summary of raw fabrics on the inventory, as of January 6, 1936. Both these documents were introduced into evidence through the taxpayer's witness, Fersko, its assistant treasurer and accountant. Fersko did not become connected with the Cotan Corporation until August 30, 1937. He had had nothing to do with the preparation of the exhibits. He said the inventory was in the handwriting of one Edward Gault, who had been with Cotan as accountant but was no longer so employed. Gault was not present at the trial. The statement was made that he could not be located, despite efforts to do so. Fersko stated that the monthly inventory for December, 1935, was made in the regular course of business and that it was adjusted to January 6, 1936. As we read the record, Fersko said that the summary of raw fabrics was also in Gault's handwriting, although the Tax Court found to the contrary. The witness testified that the summary came into his hands as one of the records of the company and that it would be something that would be prepared in the ordinary course of business. There were no other witnesses called with respect to these exhibits nor was there any reference to other Cotan records to show their source. Absence of substantiating witnesses was explained by statements that they were no longer employed by the taxpayer and were unavailable.

Petitioner argues that because the inventory was allowed in evidence as a business record, plus the fact that it had been used by the Commissioner in checking the Cotan tax situation, it should have been given full weight by the Tax Court. The summary of raw cotton goods on hand is then urged as a mathematical calculation necessarily deriving from the inventory. The alleged acceptance of the inventory by the Commissioner as correct seems to be based upon the fact that in October, 1939, a revenue agent examined Cotan's records, with his calculation founded on the inventory figures. It is inferable that the agent at that time was forced to rely upon information furnished by Cotan. He found that Cotan held $15,123.98 worth of articles at the critical date. He said that he was unable to specifically identify the goods and, therefore, used the first-in, first-out, rule.[2] Petitioner insists that the agent's inventory figure is worthless because of his methods, which, among other things, involved use of certain company records, some of which were missing.

The evidence, which was most persuasive to the Tax Court in arriving at the total of unsold articles, was the taxpayer's journal voucher of April 30, 1936. This was made within four months of the termination date of the federal processing tax but prior to the enactment of the unjust enrichment tax law. The voucher reads in part: "Our inventory of 1/6/36 included Proc. Taxes amounting to $13,555.30 of which $4,192.33 was included in our 4/30/36 inventory."

Petitioner suggests that the above must be an arbitrary estimate by one of its bookkeeping employees but did not produce a single witness to in any way explain it.

It is also contended that the Tax Court was obliged to accept the petitioner's summary of raw goods as a proper application of the first-in, first-out, rule, because the summary followed Schedule K P T, Form 75, a schedule prescribed by the Commissioner. Concededly, the summary stems from the inventory and whether calculated correctly or not, its basic figures are those of the inventory. The Tax Court also

[2] Treasury Regulations 95, promulgated under Title III of the Revenue Act of 1936:

"Art 20. First in—first out rule.—In determining the cost or the selling price of articles, or the net income with respect to articles which were manufactured, produced, or acquired by the taxpayer on different dates, the taxpayer, unless he can identify the particular articles with respect to which the cost, selling price, or net income is to be determined, shall be deemed to have sold the articles in the order in which they were manufactured, produced, or acquired, by the taxpayer."

found that other vouchers submitted tend to support respondent's contention that not all of the reimbursements made were included in the January 6, 1936 inventory.

■ On this phase of the case the Commissioner's determination which was upheld by the Tax Court is presumptively correct and the burden lies with the taxpayer to disprove it. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. The Tax Court found that the petitioner's evidence as to its inventory and summary of raw cotton articles was so lacking in probative force as to be valueless. The circumstances surrounding those exhibits and their introduction into the record were unusual to say the least. That they were allowed into evidence meant no more than that they were received as part of the petitioner's proofs, for what they were worth. No matter what calculations appeared in the summary, and assuming its method may well have been in accord with the schedule prescribed by the Commissioner, its foundation was the inventory figures as to the raw cotton articles. The summary stands on no higher plane than the inventory even though it may be correct in form as to application of the first-in, first-out rule.

It may also be that the taxpayer's entry of April 30, 1936, of $13,555.30, was not based on specific identification of the goods since the Tax Court found that they could not have been followed once they were processed, although at the time of the entry it would seem that there was more information available than later. However, there is no reason for assuming that such figure was not based on the first-in, first-out rule. It is from petitioner's own records, and was made within four months of the invalidation of the Agricultural Adjustment Act. It is within $1,568.68 of the agent's result, which latter was obtained by the first-in, first-out method.

Petitioner argues as its second point that it absorbed the entire processing tax, not passing any of it along to its vendees. If this is so, it is not liable for unjust enrichment tax. Section 501(e) of the Revenue Act of 1936 provides the extent to which the taxpayer shifted to others the burden of a federal excise tax shall be presumed to be an amount computed either (1) by deducting from the selling price of the articles, their cost plus the average margin with respect to the quantity involved; or (2) *if the taxpayer so elects by filing his return*

*on such basis,* deducting the average cost of all taxed articles sold from their aggregate selling price with the excess of such margin then multiplied by the number of such units represented by the articles with respect to which the computation is being made. (Emphasis ours.)

The taxpayer's return did not furnish any Method I data, and there was no election as required, by the taxpayer to file its return under Method II. Sometime prior to the trial in the Tax Court, a shift computation was submitted to the Commissioner. This was admitted into evidence in the Tax Court. The taxpayer claims that it covered both prescribed methods and that it presumptively established that the burden of the tax was not shifted. Petitioner's witness, Fersko, testified regarding it and said that the compilation had been made by Gault. Fersko did not have the work sheets. He had not had anything to do with the summary at all. He did not know whether part at least of the source records from which the summary had been taken were still available. He said that subsidiary records are only kept by the company for six or seven years. Fersko was the sole witness for the petitioner in support of its shift computation.

Certain journal entries of the taxpayer indicated that it had, on occasion at least, shifted the process tax to its customers. For example, a journal voucher in evidence for the respondent and dated 4/30/36 shows a $5,000 entry:—"To set up a Reserve to provide for estimated amount of Process. Tax refund *to our customers.*" Another journal entry, dated December 31, 1936, also in evidence for the respondent showed the transfer of $4,557.46 reserve for process tax refund to earned surplus, with the notation, "All Processing Tax deductions and etc., made by our customers have been charged to above reserve a/c therefore it is not necessary to continue the same."

The Tax Court held that the shift computation as presented did not possess any probative weight, and therefore did not give the petitioner the advantage of the statutory presumption above mentioned.

■ The situation as to both points made by the appellant is much the same fundamentally. The questions are factual. There was substantial evidence to justify the Tax Court's finding that only $13,555.30 of the net reimbursements represented goods held in inventory by the taxpayer on January

6, 1936. There was also solid support in the record for that Court's holding that the shift computation of the petitioner was so lacking in credibility that it carried no statutory presumption with it. Even if this latter were not so, rebuttal evidence was presented on this point from the taxpayer's books by the respondent to overcome such presumption and adequately support the finding of the Tax Court that the petitioner had failed to establish that it had actually absorbed the entire processing tax burden. The decision of the Tax Court on both points should, therefore, be affirmed. Commissioner of Internal Revenue v. Scottish American Investment Company, Limited, 323 U.S. ——, 65 S.Ct. 169; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, rehearing denied 321 U.S. 231, 64 S.Ct. 495; Wilmington Trust Co. v. Helvering, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352.

Affirmed.