Juhl SMITH and Vera Smith, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 75–1668.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1976.

Decided July 9, 1976.

---

Charles E. Wright, Lincoln, Neb., for appellants.

George C. Wolf, Atty., Tax Div., Dept. of Justice, Washington, D.C., for appellee; Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kesley, and Jeffrey S. Blum, Attys., Tax Div., Dept. of Justice, Washington, D.C., filed brief.

Before BRIGHT and HENLEY, Circuit Judges, and TALBOT SMITH, Senior District Judge.[*]

HENLEY, Circuit Judge.

Appellants Juhl and Vera Smith, hereafter referred to jointly as "taxpayer," appeal from a decision of the United States Tax Court entered on July 24, 1975 that taxpayer owed a deficiency of $8,014.31 for 1969 income taxes. This court has jurisdiction pursuant to 26 U.S.C. § 7482.

The facts essentially are undisputed. Taxpayer and his brother each owned an undivided one-half interest in 120 acres of irrigated farm land in Dawson County, Nebraska, and the brother paid taxpayer rent on a sharecrop basis for use of taxpayer's interest in that property. In April, 1968 taxpayer purchased 640 acres of cattle grazing land in Custer County, Nebraska, for $49,600.00. Thereafter taxpayer and his

---

[*] Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

brother sought the advice of an attorney concerning how they might sever their interests in the Dawson County land without paying income tax on the transaction. Acting upon advice of counsel taxpayer conveyed by warranty deed 516 acres of the Custer County land to his brother on March 24, 1969 for $40,000.00, which was approximately the sum taxpayer had paid for the land at $77.50 per acre. This conveyance was pursuant to an oral agreement between taxpayer and his brother that later the brother would convey to taxpayer the 516 acres in exchange for taxpayer's undivided one-half interest in the Dawson County property.

In April, 1969 taxpayer and his brother and the brother's wife executed a written exchange agreement and on April 25, 1969 the exchange was effected by warranty deeds, whereby taxpayer conveyed to his brother taxpayer's undivided one-half interest in the Dawson County land and the brother conveyed to taxpayer the 516 acres in the Custer County land.

The Commissioner assessed against taxpayer a deficiency based upon a net long term capital gain of $15,250.00 for 1969 resulting from the sale of taxpayer's interest in the Dawson County property. Taxpayer filed a protest which was disallowed. He then filed a petition for review in the Tax Court and the Tax Court entered the decision from which follows this appeal.

The Tax Court found for the Commissioner on grounds that the series of transactions constituted a sale and was not an exchange requiring nonrecognition of gain or loss under 26 U.S.C. § 1031(a).[1]

In seeking reversal of the decision of the Tax Court taxpayer basically takes the position that the Tax Court erroneously assessed the substance of the entire transaction in determining whether a sale or exchange took place. Relatedly he argues

that the court failed to consider the fact that his economic condition was the same after the described transaction as before, that the court erroneously considered the transaction in component parts rather than as a whole, and that that court's opinion is improperly based upon an assumption of his intent rather than upon "the economic realities that existed prior to, during, and following completion of the transaction." We affirm the decision of the Tax Court.

The standard for review of Tax Court decisions was set forth by this court in *Arc Realty Co. v. C.I.R.,* 295 F.2d 98, 102 (8th Cir. 1961):

> . . . We do not retry the case and substitute our judgment for that of the Tax Court, and if that Court's finding is supported by substantial evidence upon the record as a whole, and is not against the clear weight of the evidence or induced by an erroneous view of the law, it cannot be disturbed upon appeal. (Citation omitted.)

*See also Wilmington Co. v. Helvering,* 316 U.S. 164, 168, 62 S.Ct. 984, 86 L.Ed. 1352 (1942); *Riss v. C.I.R.,* 478 F.2d 1160, 1164 (8th Cir. 1973); *Greenspon v. C.I.R.,* 229 F.2d 947, 949 (8th Cir. 1956).

Taxpayer's contention that his economic situation was unchanged after the series of transactions outlined above is based upon his consideration of the 1968 purchase of the Custer County property as well as the later transactions. Taxpayer points out that in 1968 he had a basis of $9500.00 in the Dawson County land and purchased the Custer County land for $49,600.00. He argues that when he conveyed to his brother for $40,000.00 the 516 acres in Custer County he theoretically received the same $40,000.00 as he himself had paid for the land. Taxpayer says that after he exchanged his interest in the Dawson County land for his

---

1. Section 1031(a) provides as follows:

    Nonrecognition of gain or loss from exchanges solely in kind.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

brother's 516 acres in Custer County, he was in the same economic situation as he had been before, because he had $40,000.00 and land with a basis of $9500.00.

Taxpayer thus argues that there was no gain or loss to him after the series of transactions which resulted in an exchange. With regard to the congressional intent behind the nonrecognition section he notes this court's holding in *Century Electric Co. v. C.I.R.*, 192 F.2d 155, 159 (8th Cir. 1951), that the section is to be applied "where in theory the taxpayer may have realized gain or loss but where in fact his economic situation is the same after as it was before the transaction."

In finding that a sale had actually taken place and that taxpayer had realized a taxable gain, the Tax Court rejected taxpayer's argument that his financial position was unchanged. It reasoned that the 1968 purchase of the Custer County land was not a transaction to be considered because it was not part of the over-all design to make a § 1031(a) exchange. The Tax Court ruled that only those transactions which were executed in contemplation of the exchange should be considered in determining whether a sale or exchange had actually taken place. The court thus eliminated from consideration the taxpayer's position that theoretically the $40,000.00 he received was the same $40,000.00 he himself had paid for the land, but considered as relevant the taxpayer's transfer of 516 acres to his brother for $40,000.00.

We are mindful of authority holding that a transaction may not be separated into its component parts for tax purposes. *Century Electric Co. v. C.I.R., supra*, 192 F.2d at 159. *See also C.I.R. v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945); *Redwing Carriers, Inc. v. Tomlinson*, 399 F.2d 652 (5th Cir. 1968); *Alderson v. C.I.R.*, 317 F.2d 790, 793 (9th Cir. 1963).

■ But we have reviewed the record and hold that substantial evidence supports the finding of the Tax Court that the 1968 purchase was not, while the conveyance of the 516 acres to the brother was, in contemplation of a subsequent nontaxable ex-change. Neither taxpayer's testimony nor that of his brother indicated that the 1968 purchase by taxpayer of the Custer County land was part of the scheme to sever the interests of taxpayer and his brother through a § 1031(a) exchange. However, both taxpayer and his brother indicated that the 1969 transfer by taxpayer to the brother of 516 acres for $40,000.00 was executed on the advice of counsel and pursuant to an oral agreement that the parties would later exchange properties.

■ Thus we hold that it was proper for the Tax Court not to consider the 1968 purchase. In *C.I.R. v. Court Holding Co., supra*, 324 U.S. at 334, 65 S.Ct. at 708, the Supreme Court stated that "the transaction must be viewed as a whole, and each step, *from the commencement of negotiations* to the consummation of the sale, is relevant." (Emphasis added.) By considering every transaction which was in contemplation of the overall scheme to effect a nontaxable exchange, the Tax Court considered the transaction as a whole and not in component parts.

■ We are in full agreement with taxpayer that the Tax Court should look to the substance of the transaction in reaching its decision. Yet its consideration is not limited to the fact that taxpayer and his brother exchanged warranty deeds. In *C.I.R. v. Court Holding Co., supra*, 324 U.S. at 334, 65 S.Ct. at 708, the Supreme Court held as follows:

The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. . . . To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.

*See also Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); *Redwing Carriers, Inc. v. Tomlinson, supra*, 399 F.2d at 657, and cases cited.

To determine whether a transaction is a sale or exchange a court may look to the intent of the parties as well as to what was actually done. *See Alderson v. C.I.R., supra; Coastal Terminals, Inc. v. United States,* 320 F.2d 333 (4th Cir. 1963).[2]

Taxpayer points out that where the record shows that what actually took place was an exchange, the taxpayer is entitled to nonrecognition treatment of gain or loss, even if property involved was acquired for the sole purpose of exchange.[3] *Alderson v. C.I.R., supra; Coastal Terminals, Inc. v. United States, supra.* And, taxpayer argues that the question is "whether what was done, apart from the tax motive, was the thing which the statute intended." *Gregory v. Helvering, supra,* 293 U.S. at 469, 55 S.Ct. at 267.

We do not dispute the legal right of a taxpayer to avoid or decrease his tax obligations as allowed by law. *See, e. g., Gregory v. Helvering, supra,* 293 U.S. at 469, 55 S.Ct. 266. *Redwing Carriers, Inc. v. Tomlinson, supra,* 399 F.2d at 659. But this situation does not call for application of the rule that tax motive is not to be considered, for "the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." *Gregory v. Helvering, supra,* 293 U.S. at 470, 55 S.Ct. 266.

Looking beyond the formal exchange of property by taxpayer and his brother, it is clear that the parties intended to consummate a sale of taxpayer's undivided one-half interest in the Dawson County property to his brother for $40,000.00, and after all relevant transactions had been completed taxpayer owned the same Custer County property he had owned before.[4]

The decision of the Tax Court is affirmed.

---

2. Even though intent is a consideration, it is not controlling. *See Carlton v. United States,* 385 F.2d 238 (5th Cir. 1967), where the court found no exchange but where the government had stipulated that an exchange was intended but alleged that no exchange was actually effected.

3. There is no issue concerning whether the properties are of "like kind" for purposes of nonrecognition treatment.

4. Unlike the taxpayers in *Alderson v. C.I.R., supra,* and *Coastal Terminals, Inc. v. United States, supra,* the taxpayer did not actually intend an exchange. It is true that the corporate taxpayer in *Coastal Terminals* owned, before negotiations to exchange began, options to

purchase the property it acquired as a result of the exchange. The facts of that case are distinguishable from those of the instant case and justify a different result. The *Coastal Terminals* taxpayer was financially unable to exercise the options to purchase and to make improvements on the property. It assigned the options to another company, which exercised them, made the improvements and exchanged the property for other property already owned by taxpayer. It is clear that in *Coastal Terminals* the parties intended an exchange and that without the exchange they would have been unable to carry out their respective wishes to own the properties acquired.