**Louis NOTO and Ann Noto, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Civ. A. No. 83–3952.**

United States District Court,
D. New Jersey.

June 6, 1984.

Harvey R. Poe by Gerald Rotunda, Livingston, N.J., for plaintiffs.

Stephen Lyons, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

LACEY, District Judge.

Before this court is the motion of the Government for summary judgment. The determination of whether a genuine fact issue exists hinges upon the legal question of what legal standard is to be employed by this court to determine whether the gambling activities of plaintiff Louis Noto [1] constitute a "trade or business" within the meaning of Sections 62(1) and 162(a) of the Internal Revenue Code (the Code), 26 U.S.C. §§ 62(1) and 162(a). The test propounded by the plaintiff necessarily involves an evaluation of the facts of the case, which, as is conceded by the Government, is inappropriate on a motion for summary judgment. On the other hand, the test advanced by the Government would be appropriate at this juncture, for the facts to which it applies are not traversed by the plaintiff.

The following facts are uncontroverted. During the calendar year 1978, plaintiff Louis Noto experienced losses from his gambling activities which exceeded his winnings from the same activities. On his original 1978 income tax return, plaintiff listed the gambling losses as an itemized deduction from adjusted gross income in arriving at taxable income and, as permitted by Section 165(d) [2], deducted the losses only to the extent of his gambling winnings.

Upon auditing plaintiff's 1978 return, the Internal Revenue Service determined that the gambling loss deduction was properly taken but that it was an "item of tax preference" under Section 57(a)(1) and was therefore subject to the minimum tax imposed by Section 56(a)(3). [3] Based on its determination, the IRS assessed a deficiency in the amount of $2,763.00, which was collected by reducing the tax refund due plaintiff for the calendar year 1982.

Plaintiff then filed a claim for a refund of the $2,763.00 on the basis that the gambling losses were "attributable to a trade or business carried on by the taxpayer." Losses in this category are "above the line" deductions, deductible from gross income to arrive at adjusted gross income pursuant to Section 62(1) and, as such, are not items of tax preference under Section 57(b)(1)(A). The IRS denied the refund claim, taking the position that the plaintiff's gambling activities did not amount to a "trade or business" within the meaning of Sections 62(1) and 162(a) of the Code.

Although the term "trade or business" appears in numerous sections of the Code, it is not defined in either the Code or the Treasury Regulations. The term has been left to judicial interpretation, and, as would be expected, there now exist different, although not necessarily inconsistent, views as to the appropriate legal standard for

1. Plaintiff Ann Noto is a party to this action solely because she filed a joint tax return with her husband, Louis, for the year 1978. Since the activities in question were those of Louis Noto, all references in this memorandum shall be to Louis Noto.

2. All references are to the Internal Revenue Code as it was in effect during 1978. Statutory sections pertinent to this memorandum opinion are appended.

3. For tax years beginning after 1982, the question whether gambling losses are attributable to the carrying on of a trade or business will no longer be important for minimum tax purposes. Section 201 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 411, revised the minimum tax of Section 56 to apply only to corporations. TEFRA further amended Section 55 to provide an "alternative minimum tax" on individuals that is similar to the Section 56 tax at issue here. However, under current law, deductions for gambling losses are specifically excluded from the Section 55 tax base.

determining whether a taxpayer's activities constitute a trade or business.

The standard advanced by the plaintiff is known as the "facts and circumstances" test. Its origin is in the case of *Higgins v. Commissioner*, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), where the Supreme Court affirmed the decision of the Board of Tax Appeals that a taxpayer's personal investment activity did not amount to a trade or business. Writing for the Court, Justice Reed stated, "[t]o determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." 312 U.S. at 217, 61 S.Ct. at 478. This ostensibly innocuous language has been construed by the United States Tax Court as mandating an ad hoc evaluation of the facts in each case without applying any objective criteria. *See, e.g., Ditunno v. Commissioner*, 80 T.C. 362, No. 12, Tax.Ct.Rep. (CTA Dec. 39,888) (CCH 1983 Regular Decisions) and *Groetzinger v. Commissioner*, 82 T.C. 793, No. 61, Tax.Ct.Rep. (CTA Dec. 41,238) (CCH May 25, 1984).

The standard set forth by the Government is referred to as the "goods or services" test and has its genesis in the concurring opinion of Justice Frankfurter in *Deputy v. du Pont* where he stated, " '. . . carrying on any trade or business,' within the contemplation of § 23(a) [statutory predecessor to Section 162], involves holding one's self out to others as engaged in the selling of goods or services." 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940). The Government maintains that while a court must necessarily examine all the facts and circumstances of a taxpayer's activities, it must first find that the taxpayer holds himself out to others as providing goods or services before it can conclude that his activities constitute a trade or business. Thus, in the Government's view, the "goods or services" standard is a threshold requirement which must be met before a taxpayer's activities may be considered to a trade or business.

It is undisputed, for the purpose of this motion, that for the year in question, plaintiff devoted a substantial amount of his time and effort to gambling.[4] On a daily basis, plaintiff attended one of several racetracks, purchased racing forms and programs in order to handicap the races, and placed wagers on the races. He spent a substantial portion of his time gathering information for handicapping, which included videotaping races broadcast on television and conferring with owners and trainers or race horses. He maintained records of his gambling winnings and losses along with the daily racing forms used and the handicapping notes relied upon. He estimates that he spent approximately 60% of his time per week toward producing income in such a manner, while 30% of his time was devoted to his work with the Essex County Welfare Board and 10% was left for leisure. All of his gambling activity, however, was for his own benefit. That is, plaintiff used his own money for the wagers and at no time did he ever place bets for others or offer himself out to others as a horse racing consultant. Thus, if the "goods or services" standard is the appropriate test, then there is no genuine issue of material fact and summary judgment may be entered in favor of the Government.

The parties disagree as to which test has been adopted in the Third Circuit, each pointing to authority which supports its position. The Government maintains that the "goods and services" test was expressly adopted by the Third Circuit in *Helvering v. Wilmington Trust Company*, 124 F.2d 156, 158–59 (3d Cir.1941), *reversed on other grounds*, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352 (1942) and later applied by the court in *McDowell v. Ribicoff*, 292 F.2d 174, 178 (3d Cir.1961), *cert. denied*, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961). The plaintiff, on the other hand, argues

---

**4.** These facts are taken from Plaintiff's Answers to Defendant's First Set of Interrogatories, which was attached to the Government's memorandum in support of its motion for summary judgment and relied upon by the Government in its motion.

that the Third Circuit declared the "facts and circumstances" test to be the appropriate standard in *Commissioner v. Stokes' Estate*, 200 F.2d 637, 638 (3d Cir.1953) and applied that standard in *Commissioner v. Moffat*, 373 F.2d 844, 846–47 (3d Cir.1967).

The arguments of the parties are well-taken. However, given the uncertainty in the law[5], the court is not prepared at this time to rule, as a matter of law, that a taxpayer must hold himself out to others as selling goods or services before his activities will constitute a trade or business. Accordingly, the motion for summary judgment will be denied.

In order that the disposition of this matter not be delayed, the parties are directed to pursue discovery, Should I ultimately conclude that the "facts and circumstances" test is the appropriate one, the plaintiff's activities in terms of substantiality and frequency would become material. Accordingly, this is an area that should be developed during discovery.

Moreover, given the limited factual area to be developed, there is no reason why this case cannot be tried on or about July 23, 1984. Thus, discovery should be commenced immediately. A pre-trial conference will be scheduled for July 5, 1984 at 9:00 a.m.

### APPENDIX

### TEXT OF I.R.C. STATUTES

*I.R.C. Section 56(a): Imposition of Tax:*

(a) *General Rule.*—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of—

(1) $10,000, or

(2) the regular tax deduction for the taxable year (as determined under subsection (c)).

**5.** I note, for example, the opposing positions taken by the Second Circuit in *Gajewski v. Commissioner*, 723 F.2d 1062 (2d Cir.1983) and the

*I.R.C. Section 162(a): Trade or Business Expenses:*

(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade. or business, including—

*I.R.C. Section 62(1): Adjusted Gross Income Defined:*

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

(1) *Trade and business deductions.*—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

*I.R.C. Section 63(b): Taxable Income Defined:*

(b) *Individuals.*—For purposes of this subtitle, in the case of an individual, the term "taxable income" means adjusted gross income—

(1) reduced by the sum of—

(A) the excess itemized deductions, and

(B) the deductions for personal exemptions provided by Section 151, and

(2) increased (in the case of an individual for whom an unused zero bracket amount computation is provided by subsection (e)) by the unused zero bracket amount (if any).

*I.R.C. Section 165(d): Losses:*

(d) *Wagering Losses.*—Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

*I.R.C. Section 57(a)(1) & (b)(1): Items of Tax Preference:*

(a) *In General.*—For purposes of this part, the items of tax preference are—

Tax Court in *Groetzinger v. Commissioner, supra.*

(1) *Adjusted Itemized Deductions.*—An amount equal to the adjusted itemized deductions for the taxable year (as determined under subsection (b)).

(b) *Adjusted Itemized Deductions.*—

(1) *In General.*—For purposes of paragraph (1) of subsection (a), the amount of the adjusted itemized deductions for any taxable year is the amount by which the sum of the deductions for the taxable year other than—

(A) deductions allowable in arriving at adjusted gross income,

(B) the deduction for person exemptions provided by Section 151,

(C) the deduction for medical, dental, etc., expenses provided by Section 213, and

(D) the deduction for casualty losses described in Section 165(c)(3),

exceeds 60 percent (but does not exceed 100 percent) of the taxpayer's adjusted gross income for the taxable year.

*I.R.C. Section 212: Expenses For Production of Income:*

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.