Raymond Fitzgerald and Manor M. Fitzgerald, Husband and Wife v. Commissioner.
Fitzgerald v. Commissioner
Docket No. 52539.
United States Tax Court
T.C. Memo 1956-280; 1956 Tax Ct. Memo LEXIS 12; 15 T.C.M. (CCH) 1450; T.C.M. (RIA) 56280; December 27, 1956
Raymond Fitzgerald, 4034 Third Avenue N., St. Petersburg, Fla., for the petitioners. Hugh G. Isley, Jr., Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies of $183.80, $254.48 and $256.16 in income tax against the petitioners for the years 1950, 1951 and 1952, respectively. The questions for decision are (1) whether the activities of Raymond Fitzgerald in purchasing, owning and selling corporate stocks in the years herein constituted the carrying on of a trade or business and, as a consequence, the expenses in connection therewith were deductible, in arriving at adjusted gross income, under section 22(n) of the Internal Revenue Code of 1939, and (2) *13 whether certain of the expenditures were non-business deductions under section 23(a)(2) of the Code, or non-deductible personal expenditures. Findings of Fact Some facts have been stipulated and are found as stipulated. The petitioners are husband and wife, and reside in St. Petersburg, Florida. They filed joint income tax returns for the years involved with the collector of internal revenue at Jacksonville, Florida. Prior to June of 1950, Raymond Fitzgerald, sometimes referred to as petitioner, was an employee of Gulf Public Service Company, a public utility in New Iberia, Louisiana. Beginning possibly as early as 1920, he had at times bought, owned and sold securities for his own account. At the end of May 1950, he left the employ of the Gulf Public Service Company, and shortly thereafter, moved to St. Petersburg, Florida. It was his intention to devote a part of his time to activities relating to the buying, owning and selling of securities, and part of his time to research in physics. In the field of physics, he was doing research in hydrokinetics and thermodynamics. He was especially interested in thermodynamics. He ceased his work in physics research when it ceased to *14 have the possibility of remuneration which he thought it might have. This occurred about 1953. After moving to Florida, petitioner's activities relating to the purchase, owning and selling of securities consisted of the subscribing to an advisory and information service and to publications such as Barron-Collier and Business Week; the reading and studying of such services and publications, corporation statements and reports; the making of trips to a broker's office for the purpose of consulting the broker, or of looking up records in such office; the studying of financial, economic and political matters for the purpose of determining, whether to purchase, sell, or retain securities; the giving of orders to the broker to buy securities, or sell securities; and the receiving of dividends on the securities owned and held by him. In 1950, petitioner bought or sold securities on 17 different dates. [1] In 16 transactions on 14 different dates, he purchased 1,375 shares of stock of 13 different corporations, paying therefor $40,552.20. In ten transactions on six different dates, he sold 810 shares of stock in eight different corporations and in one transaction ten $100 bonds of another *15 corporation. For the 810 shares of stock and the ten $100 bonds, he received $23,537.59. On their return for 1950 petitioners reported the sale of 900 shares of stock in seven corporations and the sale of $1,000 par value of bonds of another corporation. The sales were shown as having been made on ten different dates. The cost basis of the securities was shown as $24,898.45 and the proceeds of sales as $27,650.97, on the basis of which $425.81 was reported as short-term gain, $154.99 as short-term losses, $3,397.85 as long-term gain and $916.22 as long-term losses. [2]
*16 In 1951, petitioner bought and sold securities on three different dates. In four transactions, all on the same date, he purchased 392 shares of stock of four different corporations, paying therefor $7,494.57. In addition, on a date not shown, he purchased three $100 bonds of another corporation for $300. In three transactions on three different dates, petitioner sold 200 shares of stock, all of the same corporation, and three $100 bonds of a second corporation. For the 200 shares of stock and the three bonds, he received $14,992.84. On their return for 1951 petitioners reported long-term gain on the sale of the three bonds and of the 200 shares of stock in the amounts of $61.76 and $10,207.52, respectively.the shares of stock sold were reported as having been purchased on October 15, 1948, and April 7, 1949. In 1952, petitioner bought or sold securities on nine different dates. In two transactions on two different dates, he purchased 14 shares of stock in one corporation and three $100 bonds in another corporation, paying therefor $643. In ten transactions on seven different dates, petitioner sold 590 shares of stock in seven different corporations. For the 590 shares of stock, *17 he received $29,550.37. On their return for 1952 petitioners reported long-term gain on the sale of the 590 shares of stock in the amount of $6,981.83. [3]
On their return for 1950 petitioners reported the receipt of dividends in the total amount of $6,019.27 on 23 different corporate stocks. On their return for 1951 they reported total dividends received of $5,190.20 on 20 different corporate stocks. On their return for 1952 they reported total dividends received of $5,584.66 on 18 different corporate stocks. All of the stocks purchased in all three years were dividend-paying stocks. Of the 13 corporations the stock of which was purchased by petitioner in 1950, dividends were reported on 12 such stocks for 1950 and on 11 such stocks for both 1951 and 1952. [4] Of the four corporations the stock of which was purchased by petitioner in 1951, dividends received *18 were reported on all four of such stocks both in 1951 and 1952. Of the one corporation the stock of which was purchased by petitioner in 1952, dividends received were reported on such stock in 1952. Of the 23 different corporate stocks on which dividends were reported for 1950, 11 of such stocks were acquired by petitioner in a year or years not shown but prior to 1950. Of the 20 different corporate stocks on which dividends were reported for 1951, eight of such stocks were acquired in a year or years not shown but prior to 1950. Of the 18 different corporate stocks on which dividends were reported for 1952, eight of such stocks were acquired in a year or years not shown but prior to 1950. In their returns for the years 1950, 1951 and 1952, petitioners, in arriving at adjusted gross income, deducted the expenses which they attributed to and regarded as having been incurred in the activities of *19 petitioner Raymond Fitzgerald in buying, owning and selling corporate stocks and bonds. Also, in arriving at their reported net income for each of those years, they claimed the statutory standard deductions. The respondent, in his determination of deficiency for each of the said years, determined that the expenses so claimed were not allowable under section 22(n) in computing adjusted gross income, but to the extent deductible, were deductible under section 23 in compting net income. And since the amounts of interest paid in each year and the amounts allowed by him as non-business expense deductions under section 23(a)(2) were for each year in excess of the standard deduction allowable, deductions for interest and such non-business expenses were allowed in lieu of the standard deduction. Some of the items claimed were determined to be non-deductible personal expenditures and were not allowed as non-business deductions under section 23(a)(2). These included estimated portions of depreciation on petitioners' home and on furniture and fixtures; amounts claimed as telephone and telegraph expense; portions of petitioners' home expenditures for electricity and water; automobile expense; *20 and postage and office supplies. Petitioner maintained no office separate and apart from his home. He did, in one room, have a desk and a typewriter. It was usual for him to spend some time on most business days in reading reports and financial publications. He made some trips in his automobile to the broker's office in connection with his securities activities. The amounts claimed as deductions, which deductions respondent has disallowed, do not purport to be amounts actually expended for the purposes for which they were claimed, but represent allocations based on estimates of total expenditures made by petitioner for both his personal and his securities activities and use; and in the case of the automobile, the amount claimed was by allocation from total expenditures which were likewise estimated. Petitioner did in connection with his securities activities expend some amounts for telephone, postage, office supplies and automobile expense, which for 1950 amounted to $90; for 1951, $75; and for 1952, $85. Opinion Adjusted gross income is defined by section 22(n)(1) of the Internal Revenue *21 Code of 1939, [5] to mean gross income minus the deductions allowed by section 23 of the Code which are attributable to a trade or business carried on by the taxpayer, and our first question is whether petitioner's activities in buying, owning and selling securities for the years 1950, 1951 and 1952 constituted the carrying on of a trade or business within the meaning of section 22(n)(1). If not, the expenditures which are deductible are deductible under section 23 in computing net income, and petitioner would not be entitled, in addition, to the statutory standard deduction. It is well settled that expenses relating to the management of one's investments in stock *22 and bonds, even though the activities include the buying and selling of securities, as well as the owning and holding thereof for the production of income, are not expenses incurred in the carrying on of a trade or business within the meaning of the statute. Higgins v. Commissioner, 312 U.S. 212. It is the contention of the petitioner that he was a trader in securities; that his activities were more extensive than that of one who is looking after his investments; and that those activities constituted the conduct of a trade or business within the meaning of the statute. Having heard and considered the evidence, we are satisfied that the proof of record falls short of showing that petitioner's activities constituted the carrying on of a trade or business, rather than the activities of an investor. In fact, they tend to indicate rather than not that petitioner's activities were those of an investor, within the meaning of the statute and Higgins v. Commissioner, supra. Although he did spend some considerable time from day to day in checking on market reports, financial data, and the like, his purchases and sales were not so extensive as to be persuasive that *23 he was actively carrying on the business of a trader in stocks and bonds. Furthermore, it appears for each of the years herein that he looked to dividends as his steady and regular source of income. In fact, on the returns for 1950 and 1951, he described his expenses as the "Cost of Dividend Income." It also appears that in purchasing stocks he purchased known dividend-producing stocks, and for each of the years herein he did in fact receive comparatively substantial dividends on such stock. His transactions also indicate that he was not acquiring securities for anything resembling a quick profit through sale. We are not advised as to his complete list of securities during the taxable years, but we do know, from the reporting of dividends on the returns, that for all of the taxable years dividends were being received on stocks which had been acquired prior to January 1, 1950, the beginning of the first of the years before us. Furthermore, according to the returns, a substantial portion of the securities which were sold were shown to have been acquired in 1947, 1948, or 1949. In that connection, it may be noted that even though the 1952 return indicates that the shares of the Great *24 Atlantic & Pacific Tea Company sold in that year were acquired in 1951, it is clear from the stipulation of the parties covering petitioner's stock transactions that they were not acquired in any of the taxable years before us, but must have been acquired prior to January 1, 1950. It is patent, we think, that the evidence falls short of showing that petitioner's activities in buying, owning and selling securities were such as to make of those activities a trade or business within the meaning of section 22(n). We so conclude and hold. See and compare Helvering v. Wilmington Trust Co., Executor, 124 Fed. (2d) 156, [6] reversing 42 B.T.A. 173, and Chang Hsaio Liang, 23 T.C. 1041, 1043, 1044. We do not agree with respondent, however, that all of petitioner's expenditures for telephone, telegraph, automobile expense, postage and office supplies were non-deductible personal expenditures, and not non-business expenses, which are deductible under section 23(a)(2). It is clear, we think, that some of the amounts expended by him for the purposes stated did relate to his investment activities, *25 and are deductible. Our difficulty is with the amounts. Patently, the record will not support the allowance of the amounts claimed. With respect to automobile expense, for instance, the amount claimed is an estimated allocation of an estimated total amount expended by petitioner both in connection with his investment activities and for personal uses. Even if we assume that the estimate of his total automobile expense is fair and reasonable, the proof relating to his use of the automobile in connection with his investment activities does not justify the allowance of amounts approaching the amounts claimed. Neither are we able, on the proof of record, to justify the allowance of any part of the cost of maintaining the home. We have set forth in our findings of fact the amounts which we do consider justified of record, taking note that petitioner's investment activities were greatest in 1950 and least in 1951. Decision will be entered under Rule 50. Footnotes
1. As a part of a stipulation the parties have placed in the record schedules showing each purchase and each sale of securities by petitioner during the years herein, including the amounts paid and the amounts received, but not including any statement of the gains realized or the losses sustained.↩
2. Of the 900 shares of stock reported on the 1950 return as having been sold during the year, 275 shares, representing stock in four corporations, are not shown by the stipulation of the parties as having been sold by petitioner in 1950. On the other hand, sales of 125 shares of stock in two corporations, shown by the stipulation to have been sold by petitioner in 1950, were not reported by petitioners on their 1950 return. Aside from the representations made on the return, the gain or loss results of the sales of securities are not shown.↩
3. Petitioners also reported on their return the sale of stock in an eighth corporation and a long-term loss of $698.68 thereon. The sales of stock of the first seven corporations are as shown by the schedule stipulated by the parties. The sale of the stock on which the loss was reported is not shown by the stipulation.↩
4. The one stock purchased in 1950 on which no dividend was received in that year was purchased in November. Dividends were received on the said stock in both 1951 and 1952. The two stocks purchased in 1950 on which dividends were not received in 1951 and 1952 were both sold in 1950.↩
5. SEC. 22. GROSS INCOME. * * *
(n) Definition of "Adjusted Gross Income." - As used in this chapter the term "adjusted gross income" means the gross income minus - (1) Trade and Business Deductions. - The deductions allowed by section 23↩ which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee;
6. Reversed on another issue, 316 U.S. 164↩.